IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


CRITTER CONTROL, INC.                    )
                                         )
              v.                         )        NO.  3:13-0695
                                         )
CARY YOUNG, d/b/a ELITE CRITTER          )
CONTROL                                  )


TO:    Honorable Aleta A. Trauger, District Judge



### R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered July 16, 2013 (Docket Entry No. 54), the Court referred this action to the

Magistrate Judge for case management, decision on all pretrial, nondispositive motions and report

and recommendation on all dispositive motions under 28 U.S.C. § 636(b)(1), and to conduct any

necessary proceedings under Rule 72 of the Federal Rules of Civil Procedure.

Presently pending are the Plaintiff's motion to dismiss the Defendant's counter-claims

(Docket Entry No. 32), the Defendant's motion for summary judgment (Docket Entry No. 85), and

the Plaintiff's motion for summary judgment (Docket Entry No. 90).  Also before the Court is the

Defendant's motion for a preliminary injunction (Docket Entry No. 46).  Set out below is the Court's

recommendation for disposition of the motions.



## I. BACKGROUND

Critter Control, Inc. ("Critter Control"), is a Michigan corporation with its principal place

of business in Michigan.  It professes to have provided animal removal services since 1983 and to

be the largest wildlife removal firm in the United States of America with approximately 116 franchises located in North America, one of which has operated in Nashville, Tennessee, since October 2001, and one of which has operated in Memphis, Tennessee, since July 2008. It alleges that beginning in 1983, it has continuously and extensively used the mark "CRITTER CONTROL" in commerce as a designator of origin or source for its wildlife removal services. The Plaintiff registered this mark, registration no. 1,503,278, with the United States Patent and Trademark Office ("USPTO") on September 6, 1988, as a service mark for wild animal and rodent removal services, in Class 37. See Docket Entry No. 1-1. As part of its business, the Plaintiff maintains an internet website at which it advertises the services of its franchisees.

Cary Young ("Young") is a citizen of Tennessee residing in Madison, Tennessee. He owns and operates a wildlife removal and relocating business using the name "Elite Critter Control." The Defendant began this business in 2012 and registered his business name with the Tennessee Department of State as a trademark on May 4, 2012. See Docket Entry No. 1-4. The Defendant also maintains an internet website through which he advertises his business.

At some point in 2012, the Plaintiff learned that the Defendant was using the term Elite Critter Control to advertise and identify his business. The Plaintiff sent to the Defendant several letters in August 2012 informing him that his use of the term Elite Critter Control infringed upon the Plaintiff's rights in its registered service mark and requesting that he cease and desist from further infringing activity. See Docket Entry No. 1-2 and 1-3. On January 11, 2013, the Plaintiff filed this action against the Defendant in the Western District of Michigan asserting a claim for trademark infringement under 15 U.S.C. § 1114(1) of the Lanham Act (the "Lanham Act") and a claim for unfair competition under Michigan common law and seeking damages and various forms of

injunctive relief.  See Complaint (Docket Entry No. 1).  The Defendant, who is proceeding pro se, filed an answer to the complaint generally denying the allegations made by the Plaintiff (Docket Entry No. 17) and also filed counter-claims against the Defendant and Kevin Clark ("Clark"), the President of Critter Control, asserting a claim for declaratory relief and for the cancellation of the Plaintiff's registration of its service mark and a claim for trademark infringement under Tennessee common law.  See Docket Entry No. 22.  There is no indication that Clark has ever been served with process in the action.

In an Opinion and Order entered July 12, 2013 (Docket Entry No. 51), the Western District of Michigan granted the Defendant's motion asserting that venue in that district was improper and transferred the action to this Court.  The action is currently set for a trial by jury on October 28, 2014.  See Docket Entry No. 72.

## II.  THE PARTIES' PENDING MOTIONS

At the time the action was transferred to this Court, several motions remained pending.  The July 12, 2013, Order entered in the Eastern District of Michigan did not make clear whether the court viewed the pending motions as either moot or effectively resolved or whether the court intended to reserve them for decision by this Court.  Subsequent to transfer of the action, this Court held a conference with the parties on October 9, 2013, during which they agreed that the only motions filed prior to transfer of the action which remained pending were: 1) the Plaintiff's motion to dismiss the Defendant's counter-claims (Docket Entry No. 32); and 2) the Defendant's motion for preliminary injunctive relief (Docket Entry No. 46).  See Order entered October 11, 2013 (Docket Entry No. 74).

Accordingly, the motions designated as Docket Entry Nos. 18, 30, 39, 40, and 48 are deemed to be withdrawn or abandoned.

By its motion to dismiss, the Plaintiff seeks to dismiss the counter-claims asserted against it for failure to state a claim upon which relief can be granted. The Plaintiff argues that the Defendant's allegations are insufficient to support his claim that the Plaintiff's registration should be cancelled because the mark lacks a secondary meaning or is generic and his claim that the Plaintiff has infringed upon the Defendant's rights to his own mark under Tennessee law. <u>See</u> Plaintiff's Supplemental Memorandum (Docket Entry No. 79).

By his motion for summary judgment, the Defendant presents arguments in support of his counter-claim seeking to cancel the Plaintiff's registration for its mark. Also included in his motion are arguments against the merits of the Plaintiff's underlying Lanham Act claim. In a supporting memorandum filed several months after his motion was filed, the Defendant expounds upon his arguments against the merits of the Plaintiff's Lanham Act claim, addresses his own state law counter-claim for infringement by the Plaintiff, and sets forth arguments directed at the Defendant's requests for sanctions against the Plaintiff. <u>See</u> Defendant's Supporting Memorandum (Docket Entry No. 102). Although the Defendant fails to support his motion with a statement of undisputed material facts, as required by Local Rule of Court 56.01(b), and although his original motion contained no supporting materials or identification of matters already in the record that support his motion, he does attach to his supporting memorandum several hundred pages of documents and copies of other materials. <u>Id.</u>

In its motion for summary judgment, the Plaintiff argues that it is entitled to summary judgment as a matter of law on both its Lanham Act claim and unfair competition claim under

Michigan common law, as well as on the two counter-claims brought by the Defendant. The Plaintiff contends that its requests for injunctive relief should be granted and that a hearing be set on the issue of damages under 15 U.S.C. § 1117. In support of its motion, the Plaintiff submits its Statement of Undisputed Material Facts (Docket Entry No. 92), the Declaration of Sean Carruth (Docket Entry No. 93), excerpts from the Defendant's deposition (Docket Entry No. 94-3), and other documents (Docket Entry Nos. 94-1, 94-2, 94-4, and 94-5).

In his motion for preliminary injunctive relief, the Defendant seeks an order enjoining the Plaintiff from taking actions that "threaten, defame, or cause irreversing (sic) effects to the Defendants business while this case is currently in litigation" and requiring the Plaintiff to take steps to "reverse" an internal complaint lodged by the Plaintiff with Facebook against the Defendant concerning the Defendant's Facebook page. See Docket Entry No. 46.

Also pending before the Court are several other non-dispositive motions that have been addressed by the Court in contemporaneously entered orders.

### III. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is reviewed under the standard that the Court must accept as true all of the allegations contained in the complaint or the counter-complaint, resolve all doubts in the non-moving party's favor, and construe the allegations of a pro se party liberally. See Kottmyer v. Maas, 436 F.3d 684 (6th Cir. 2006); Boswell v. Mayer, 169 F.3d 384, 387 (6th Cir. 1999); Morgan v. Church's Fried Chicken, 829 F.2d 10, 11-12 (6th Cir. 1987). However, although the complaint need not contain detailed factual allegations, the non-moving party must provide the grounds for entitlement to relief and this

"requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (abrogating Conley v. Gibson, 355 U.S. 41 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." Sowards v. Loudon Cnty., 203 F.3d 426, 431 (6th Cir.), cert. denied, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir.), cert. denied, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 249-50. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the

non-moving party's case.'" Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 566 (6th Cir. 2001)

(quoting Celotex Corp., 477 U.S. at 325).

"Once the moving party has presented evidence sufficient to support a motion for summary

judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant

probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559,

561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on

the pleadings but must present evidence supporting the claims asserted by the party. Banks v. Wolfe

Cnty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations,

speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a

well-supported motion for summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871,

888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In other words, to defeat summary judgment, the

party opposing the motion must present affirmative evidence to support his or her position; a mere

"scintilla of evidence" is insufficient. Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003)

(quoting Anderson, 477 U.S. at 252).


## IV. ANALYSIS

Although there are three separate dispositive motions pending before the Court, the issues

raised by the parties are interwoven through each of the motions and respective responses and are

addressed by the Court as a whole instead of through analysis of the individual motions standing

alone.[1] After a full review of the record and even with a recognition that the Defendant is entitled

---

[1] In this regard, the Plaintiff's motion to dismiss has essentially become moot because the arguments for dismissal raised in that motion are essentially subsumed into the Plaintiff's arguments for summary judgment on the Defendant's counter-claims.

to some measure of leniency in the construction and review of his filings and arguments because of his pro se status, the Court finds that neither the law nor the facts support the Defendant's opposition to the two claims brought against him or support the counter-claims asserted against the Plaintiff. Accordingly, summary judgment should be granted to the Plaintiff on the issue of liability for its claims, and the Defendant's counter-claims should be dismissed.

A. Procedural and Other Objections Raised by the Defendant

In the Defendant's filings, whether his own motion for summary judgment or his response to the Plaintiff's motion for summary judgment, he raises procedural objections to the Plaintiff's motion for summary judgment. These objections lack merit and fail to provide any basis for denying the Plaintiff's motion for summary judgment.

The Plaintiff's motion complies with the procedural requirements of Rule 56 of the Federal Rules of Civil Procedure and Rule 56.01 of the Local Rules of Court. Further, the motion is properly supported by an evidentiary basis, and the Defendant's objections to the Plaintiff's supporting affidavit and documents, as well as to the use of portions of the Defendant's own deposition, see Docket Entry No. 100, at 1-3, are unpersuasive and unsupported.

To the extent that the Defendant contends that the Plaintiff's failure to provide discovery has hindered his ability to prosecute his action, see Docket Entry No. 100, at 4, he has not shown, by affidavit or declaration, that, for specified reasons, he cannot present facts essential to justify his opposition to summary judgment as is required by Rule 56(d) of the Federal Rules of Civil Procedure. Any contention by the Defendant that discovery disputes have prevented him from

producing evidence that would support his opposition to summary judgment is conclusory and unpersuasive.

At various points in his filings, the Defendant makes other objections or arguments to the Plaintiff's pending motion for summary judgment or to the Plaintiff's claims. These objections or arguments, to the extent that they are not addressed by the Court <u>infra</u>, are so lacking in legal merit, relevance, or persuasiveness that they do not warrant individual analysis by the Court.

## B. Lanham Act

The Lanham Act, 15 U.S.C. §§ 1051 <u>et</u> <u>seq.</u>, provides the user of a trade or service mark[2] with the opportunity to register it with the U.S. Patent & Trademark Office ("USPTO") for placement on the USPTO's principal register. 15 U.S.C. §§ 1051 and 1053. The Lanham Act further permits the holder of a registered mark to bring a civil action against anyone infringing upon the registered mark in a manner prohibited by 15 U.S.C. § 1114(1)(a), which provides:

Any person who shall, without the consent of the registrant —

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or to cause mistake, or to deceive;

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

_____

[2] Although both parties have often used "trademark" in their filings with the Court, the Plaintiff's mark is a "service mark" since it is used to identify the source of services and not a good. 15 U.S.C. § 1127. However, both marks enjoy the same legal protections under the Lanham Act and are often used interchangeably with no significant legal consequences. <u>See</u> <u>Dranoff-Perlstein Assocs. v. Sklar</u>, 967 F.2d 852, 855 (3d Cir. 1992). <u>See also</u> Plaintiff's Memorandum (Docket Entry No. 91), at 5 n.5.

15 U.S.C. § 1114(1)(a). "The touchstone of liability under Section 1114 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr., 109 F.3d 275, 280 (6th Cir. 1997).

In the instant action, there is no factual dispute that the Plaintiff has been in the business of wildlife removal since 1983, has been the continuous holder since 1988 of a registered mark for CRITTER CONTROL, and that the mark is used by the Plaintiff in connection with its business. See Declaration of Sean Carruth (Docket Entry No. 93). It is further undisputed that the Defendant first began using the mark ELITE CRITTER CONTROL in connection with his wildlife removal business sometime in 2012, did not seek registration of the mark with the State of Tennessee until 2012, and has not been granted permission by the Plaintiff to use the mark. The Plaintiff seeks damages and to enjoin the Defendant from further use of ELITE CRITTER CONTROL on the ground that it is confusingly similar to the Plaintiff's registered mark.

As an initial defense to the Plaintiff's Lanham Act claim and as an affirmative counter-claim seeking to cancel the Plaintiff's registration, the Defendant contests the validity of the Plaintiff's registered mark. See Docket Entry No. 85, at 2 and 4. The Defendant argues that the CRITTER CONTROL mark should not have been registered, should not be granted protection under the Lanham Act, and should be cancelled because the mark is a generic term. The Defendant further contends that, even if the mark is not generic, it is purely descriptive with no secondary meaning and is thus undeserving of protection.

As the Sixth Circuit held in Leelanau Wine Cellars, Ltd. v. Black & Red, Inc., 502 F.3d 504 (6th Cir. 2007):

> Only those marks that are "distinctive" as a matter of law are accorded trademark protection. Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc., 280 F.3d 619, 635 (6th Cir. 2002). Certain marks, described as "arbitrary," "fanciful," or "suggestive" are "inherently distinctive" and protectable. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). A so-called "generic" mark may never qualify for trademark protection. Id. Between these two poles lie "descriptive" marks. Marks that are descriptive are not inherently distinctive but may enjoy the benefit of protection if they develop a "secondary meaning." Id. at 769; Tumblebus, 399 F.3d at 761.

502 F.3d at 512-13.

Registration of a mark "shall be prima facie evidence" of the validity of the registered mark, its registration, the registrant's ownership, and the registrant's exclusive right to use the mark on the goods or services specified in the registration. 15 U.S.C. § 1115(a). Therefore, registration of a mark on the Principal Register of the USPTO creates a rebuttable presumption that the mark is valid and either inherently distinctive or descriptive with secondary meaning. Leelanau Wine Cellars, Ltd., 502 F.3d at 513; Fuji Kogyo Co. v. Pac. Bay Int'l, Inc., 461 F.3d 675, 683 (6th Cir. 2006). The statutory presumption shifts the burden to the party who seeks to challenge the validity of the mark. See Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc., 871 F.2d 590, 593 (6th Cir. 1989); Enoch v. Enoch, 2006 WL 1006648, *6 (M.D. Tenn. Apr. 14, 2006) (Trauger, J.).

The Lanham Act provides for an additional narrowing of the ability to challenge the validity of a mark if a mark is deemed "incontestable." If a registrant satisfies certain conditions, including continuous use for five consecutive years, "the right . . . to use such registered mark in commerce" to designate the origin of the goods specified in the registration "shall be incontestable" outside of certain listed statutory exceptions. 15 U.S.C. § 1065. An incontestable registration is "conclusive evidence ... of the registrant's exclusive right to use the ... mark in commerce." 15 U.S.C. § 1115(b).

See also KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 117, 125 S. Ct. 542, 160 L. Ed. 2d 440 (2004).

The Defendant's challenge to the validity of the Plaintiff's mark and his request to cancel the registration of the mark are without merit. The Plaintiff's mark has become incontestible. See Declaration of Carruth, at ¶ 5. The Defendant's contention that the determination that the Plaintiff's mark is incontestible must have been "granted" by either this Court or the Eastern District of Michigan, see Docket Entry No. 102, at 4, is simply erroneous. See 15 U.S.C. § 1065. When a mark becomes incontestible, it is presumed to be at least a descriptive mark with a secondary meaning. Daddy's Junky Music Stores, 109 F.3d at 282. Therefore, an assertion that a registered mark is merely descriptive and lacks a secondary meaning cannot be a basis either to challenge the mark as invalid or to defend against an infringement action based upon on incontestible mark. See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 205, 105 S.Ct. 658, 663, 83 L.Ed.2d 582 (1985).

Although generic terms are not protectable, and a registered mark may be canceled on the ground that it has become generic, 15 U.S.C. §§ 1052, 1064(c), and 1065(4), the burden of rebutting the presumption of validity is on the Defendant. Nartron Corp. v. STMicroelectronics, Inc., 305 F.3d 397, 405 (6th Cir. 2002).[3] Contrary to the Defendant's assertion, the Plaintiff is not required, in the first instance, to prove that its registered mark is not generic. Id. In the Sixth Circuit, the test for whether a term is generic and therefore ineligible for trademark protection is "whether the public

---

[3] The Plaintiff contends that the Defendant only argues that the Plaintiff's mark was generic at the time it was registered, see Docket Entry No. 91, at 19, an argument that has been rejected by this Court, see Pepper Patch, Inc. v. Bell Buckle Country Store, Inc., 2006 WL 2037560, *6 (M.D. Tenn. 2006 (Echols, J.). However, the Court does not so narrowly construe the argument made by the Defendant regarding this issue and finds that he also argues that the mark became generic after registration.

perceives the term primarily as the designation of the article." Bath & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc., 76 F.3d 743, 748 (6th Cir. 1996). A generic term or common descriptive term is one that is commonly used as the name or description of a kind of goods or service. Kern's Kitchen, Inc. v. Bon Appetit, 850 F.2d 692 (6th Cir. 1988).

The Court has reviewed the Defendant's filings on the issue, see Docket Entry No. 102, at 56-127, and finds that, while he has provided some evidence of limited generic use of the phrase, he has not met his burden of rebutting the presumption that the Plaintiff's mark is valid by setting forth sufficient evidence upon which a finding could be made that the term CRITTER CONTROL is understood by the relevant public as an ordinary and widespread indicator of wild animal and rodent removal services and thus has become generic. See Magic Wand, Inc. v. RDB, Inc., 940 F.2d 638, 641 (Fed. Cir. 1991); Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc., 703 F.Supp.2d 671, 687 (W.D. Ky. 2010), aff'd, 679 F.3d 410 (6th Cir. 2012); Kebab Gyros, Inc. v. Riyad, 2009 WL 5170194, *8 (M.D. Tenn. Dec. 17, 2009) (Trauger, J.). Further, although the word "critter" may well be used to describe rodents or other unwanted animals and the word control is obviously a generic word, the Plaintiff's mark is not shown to be generic merely because it is composed of words that, when viewed individually, may be said to be generic words. See AutoZone, Inc. v. Tandy Corp., 373 F.3d 786, 795 (6th Cir. 2004).

With no issue as to the validity of the Plaintiff's mark, the Court now turns to the Plaintiff's infringement claim and whether the Defendant's use of his mark is likely to cause confusion among consumers.[4] The general requirement underlying a showing of the likelihood of confusion is that the public believes that "the mark's owner sponsored or otherwise approved the use of the

---

[4] The Defendant's use of the mark at issue in commerce is not disputed.

trademark." Carson v. Here's Johnny Portable Toilets, Inc., 698 F.2d 831, 834 (6th Cir. 1983). The Sixth Circuit has identified the following factors to consider when determining whether a likelihood of confusion exists: (1) the strength of the plaintiff's mark; (2) the relatedness of the goods or services; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) likely degree of purchaser care; (7) the intent of the defendant in selecting the mark; and (8) the likelihood of expansion of the product lines using the mark. Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc., 670 F.2d 642, 648 (6th Cir.1982). See also Daddy's Junky Music Stores, 109 F.3d at 280; Tennessee Walking Horse Breeders' & Exhibitors' Ass'n v. National Walking Horse Ass'n, 528 F.Supp.2d 772, 781-82 (M.D. Tenn. 2007) (Campbell, J.). Not all these factors are relevant in every case, and the ultimate question remains whether confusion is likely in the marketplace as a result of the alleged infringement. Therma–Scan, Inc. v. Thermoscan, Inc., 295 F.3d 623, 630 (6th Cir. 2002). The factors "imply no mathematical precision," but are a guide to determine whether confusion is likely. Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc., 931 F.2d 1100, 1107 (6th Cir. 1991).

As to the first factor, the Court has already determined that the Plaintiff's mark is a registered and incontestible mark and that the Defendant fails to raise a persuasive challenge to the validity of the mark. Accordingly, the mark is deemed to be either inherently distinctive or descriptive with a secondary meaning and, thus, should be considered a relatively strong mark. See Leelanau Wine Cellars, Ltd., 502 F.3d at 516; Wynn Oil Co. v. American Way Serv. Corp., 943 F.2d 595, 600 (6th Cir. 1991) ("Wynn Oil II"). Further, the Plaintiff has also shown evidence of the nationwide presence of its franchises, substantial advertising using its mark, and substantial revenues. See

Declaration of Carruth, at ¶¶ 6-12. This evidences the strength of the mark. See Daddy's Junky

Music Stores, 109 F.3d at 280. The Court finds that this factor weighs in favor of the Plaintiff.

As to the relatedness of the parties' services, the Sixth Circuit has articulated three categories

into which cases generally fit:

> First, if the parties compete directly by offering their goods or services, confusion is
> likely if the marks are sufficiently similar; second, if the goods or services are
> somewhat related but not competitive, the likelihood of confusion will turn on other
> factors; third, if the goods or services are totally unrelated, confusion is unlikely.

Daddy's Junky Music Stores, 109 F.3d at 282. There is no dispute that both the Plaintiff and

Defendant are in the business of providing animal and wildlife removal services to customers and

no dispute that the Plaintiff has a franchise in the same geographic area as the Defendant.

Accordingly, the parties fall into the category of directly competing by offering the same services

to the same potential customers. Id. Given the direct overlap of services offered by the parties and

the similarity of the marks, as found infra, this factor weighs in favor of the Plaintiff

Determining the similarity of marks requires the Court to determine, in the light of what

occurs in the marketplace, whether the Defendant's mark will be confusing to the public. See Wynn

Oil Co. v. Thomas, 839 F.2d 1183, 1187 (6th Cir. 1988). In making this determination, a superficial

side-by-side comparison is not appropriate, and the Court must determine whether the Defendant's

mark would confuse the public when viewed alone, in order to account for the possibility that

sufficiently similar marks "may confuse consumers who do not have both marks before them but

who may have a 'general, vague, or even hazy, impression or recollection' of the other party's mark."

Id. at 1188 (quoting James Burrough Ltd. v. Sign of the Beefeater, Inc., 540 F.2d 266, 275 (7th Cir.

1976)). The Court must view the marks at issue in their entirety and focus on their overall

impressions, not individual features. See Daddy's Junky Music Stores, 109 F.3d at 283.

The marks at issue in this case are substantially similar. The Defendant has used the Plaintiff's protected mark in its entirety with only the addition of the word ELITE prior to the Plaintiff's mark. However, there is nothing distinguishing or noteworthy about the word "ELITE." Given the minimal difference between the two marks, there is a considerable likelihood that the public would be confused by the Defendant's mark. See Express Welding, Inc. v. Superior Trailers, LLC, 700 F. Supp. 2d 789, 799 (E.D. Mich. 2010) ("Superior Trailers Nitro Stinger" and "Superior Trailers Nitro Spreader" are similar to protected marks "Nitro Stinger" and "Nitro Spreader"). The similarity of marks is a factor of considerable weight. See Champions Golf Club, Inc. v. The Champions Golf Club, Inc., 78 F.3d 1111, 1119 (6th Cir. 1996). This factor weighs in favor of the Plaintiff.

With respect to the factor of evidence of actual confusion, the Plaintiff admits to having no proof of actual confusion and, thus, this factor weighs in favor of the Defendant. However, while evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion, "[d]ue to the difficulty of securing evidence of actual confusion, a lack of such evidence is rarely significant." Daddy's Junky Music Stores, 109 F.3d at 284.

Consideration of the fifth factor of the marketing channels requires analysis of how and to whom the respective goods of the parties are sold. Homeowners Grp., Inc., 931 F.2d at 1110. Relevant considerations include "the similarities or differences between the predominant customers of the parties' respective goods or services," and "whether the marketing approaches employed by each party resemble each other." Daddy's Junky Music Stores, 109 F.3d at 285. In the instant action, the same group of customers – those wishing to pay for animal removal services – are predominant to both the Plaintiff and the Defendant and it is undisputed that both parties use the Internet to

market their services to these customers and potential customers. The parties' simultaneous use of the Internet to market their services renders this factor one that favors the Plaintiff. See Audi AG v. D'Amato, 469 F.3d 534, 544 (6th Cir. 2006).

The likelihood of purchaser care is a factor that favors the Plaintiff. "In general, the less care that a purchaser is likely to take in comparing products, the greater the likelihood of confusion." Wynn Oil II, 943 F.2d at 602. As the Sixth Circuit explained:

> Generally, in assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution. However, when a buyer has expertise or is otherwise more sophisticated with respect to the purchase of the services at issue, a higher standard is proper. Similarly, when services are expensive or unusual, the buyer can be expected to exercise greater care in her purchases. When services are sold to such buyers, other things being equal, there is less likelihood of confusion.

Homeowners Grp., Inc., 931 F.2d at 1111. Because the service marketed by the Plaintiff and the Defendant are not expensive or unusual and because they are not sought out by buyers who have a special expertise or sophistication, customers would not be expected to exercise anything other than ordinary care in selecting a provider of animal removal services.

The seventh factor for consideration is the intent of the Defendant in selecting his mark. "If a party chooses a mark with the intent of causing confusion, that fact alone may be sufficient to justify an inference of confusing similarity." Homeowners Grp., Inc., 931 F.2d at 1111. As the Sixth Circuit explained:

> a defendant who purposely chooses a particular mark because it is similar to that of a senior user is saying, in effect, that he thinks there is at least a possibility that he can divert some business from the senior user – and the defendant ought to know at least as much about the likelihood of confusion as the trier of fact.

Little Caesar Enters., Inc. v. Pizza Caesar, Inc., 834 F.2d 568, 572 (6th Cir. 1987). See also Daddy's Junky Music Stores, 109 F.3d at 286.

The Plaintiff has no direct proof of intent and attempts to offer circumstantial proof that the Defendant intentionally copied the Plaintiff's mark. Circumstantial evidence can be used to show intent, <u>Daddy's Junky Music Stores</u>, 109 F.3d at 286, and use of a mark with knowledge of another's prior use of the mark supports an inference of intentional infringement. <u>See Wynn Oil II</u>, 943 F.2d at 603. Knowledge of the protected mark can be presumed from the long term and widespread usage or advertising of the protected mark and from a defendant's intimate knowledge of the industry at issue. <u>Daddy's Junky Music Stores</u>, <u>supra</u>. Additionally, a defendant's continued use of the protected mark after being informed that its usage was infringing may also evidence intent. <u>See Wynn Oil II</u>, <u>supra</u>.[5]

The Plaintiff has provided evidence of its long term market presence in the animal removal industry. <u>See</u> Declaration of Carruth, at ¶¶ 6-12. It is also undisputed that the Defendant continued to use the Plaintiff's mark subsequent to being informed of the mark's protected status. Although intentional copying could be inferred as a result of these considerations, the Defendant has presented evidence that his search of trademark registrations with the State of Tennessee prior to registering his mark with the State of Tennessee revealed no similar marks. Such evidence could be viewed as rebutting an inference of intentional copying. Accordingly, the factor of intentional copying by the Defendant fails to weigh in favor of the Plaintiff for the purposes of the motion for summary judgment. Nonetheless, although proof of the Defendant's intent to infringe is relevant to showing a likelihood of confusion, the absence of such proof has no significance to the ultimate inquiry of

_____

[5] To the extent that the Plaintiff argues that constructive knowledge of its mark arising from the mere act of registration is evidence that supports an inference of intentional copying of its mark, this argument has specifically been rejected by the Sixth Circuit. <u>See</u> <u>Daddy's Junky Music Stores</u>, 109 F.3d at 286-87.

the likelihood of confusion and does not weigh against the Plaintiff.  See Champions Golf Club, Inc., 78 F.3d at 1121; Wynn Oil,  839 F.2d at 1189.

The final factor is the likelihood of expansion of product lines using the marks.  Because the Plaintiff and the Defendant already provide the same service in the same geographic area, however, this factor is of no importance.  See Audi AG, 469 F.3d at 545; Little Caesar Enters., Inc., 834 F.2d at 572.

The Plaintiff has set forth persuasive evidence that supports a finding of a likelihood of confusion.[6]  In such a situation, in order to avoid summary judgment in a Lanham Act case alleging a violation of 15 U.S.C. § 1114, the Defendant must establish, through pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, that genuine factual disputes exist concerning all or some of the eight relevant factors that are material to the issue of whether confusion is likely in the marketplace as a result of the alleged infringement.  See Holiday Inns, Inc. v. 800 Reservation, Inc., 86 F.3d 619, 623 (6th Cir. 1996); Homeowners Grp., Inc., 931 F.2d at 1107.  Even when the Court views the evidence in the light most favorable to the Defendant, the Court finds that the Defendant has failed to meet his burden of showing that genuine issues of material fact exist on the issue of likelihood of confusion.  Based on the record that is before the Court, the Court finds that a likelihood of confusion exists as a matter of law.

The Defendant raises two affirmative defenses to the Plaintiff's claim that its incontestible mark has been infringed.  The Court finds that neither defense has merit.

---

[6] The Defendant refers to the Plaintiff's ultimate burden for his claim as being one of proof "beyond a reasonable doubt."   See Docket Entry No. 85, at 3;  Docket Entry No. 100, at 4; and Docket Entry No. 102, at 3.  However, the correct standard of proof is a preponderance of the evidence and not the criminal standard of proof beyond a reasonable doubt.  See KP Permanent Make-Up, Inc., 543 U.S. at 120; Fuji Kogyo Co., 461 F.3d at 684.

First, the Defendant appears to raise the defense of fair use. See Docket Entry No. 85, at 2-4; Docket Entry No. 100, at 3-4, and Docket Entry No. 102, at 2. The Lanham Act provides a defense to an infringement claim where the use of the trademark "is a use, otherwise than as a mark . . . which is descriptive of and used fairly and in good faith only to describe the goods . . . of such party . . ." 15 U.S.C. § 1115(b)(4); KP Permanent Make-Up, Inc., 543 U.S. at 124; ETW Corp. v. Jireh Pub., Inc., 332 F.3d 915, 920 (6th Cir. 2003). "Under the doctrine of 'fair use,' the holder of a trademark cannot prevent others from using the word that forms the trademark in its primary or descriptive sense." ETW Corp, supra (quoting Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc., 270 F.3d 298, 319 (6th Cir. 2001)). See also 15 U.S.C. § 1115(b)(4). The fair use doctrine allows others to use the words "critter" and "control" in their normal everyday usage. For example, a competitor of the Plaintiff who states in its advertising that "it has methods to control critters that enter your house" or "we can find any critters and control them" would have a worthy fair use defense against an infringement action brought by the Plaintiff. Accordingly, the Defendant's arguments that the Plaintiff's registration of its mark allows him to monopolize and control all usage of the words "critter" and "control" is simply erroneous.

Furthermore, the fair use doctrine does not protect the Defendant's infringement of the Plaintiff's protected mark in the instant case because the Defendant's use of the mark was not a mere usage of the words to describe his own services but was a competing use of the words at issue as a mark to identify the Defendant's own business. Fair use is unavailable where a defendant uses the protected mark as part of his own trademark. See Beer Nuts, Inc. v. Clover Club Foods Co., 711 F.2d 934, 937 (10th Cir. 1983); Soweco, Inc. v. Shell Oil Co., 617 F.2d 1178, 1187 (5th Cir.1980),

cert. denied, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981); Victoria's Secret Stores v. Artco Equip. Co., 194 F. Supp. 2d 704, 724 (S.D. Ohio 2002).

Second, the Defendant raises the specter of an antitrust defense. See Defendant's Motion for Summary Judgment (Docket Entry No. 85), at 1. The Lanham Act provides a defense to an infringement action if "the mark has been or is being used to violate the antitrust laws of the United States." 15 U.S.C. § 1115(b)(7); adidas Am., Inc. v. Payless Shoesource, Inc., 529 F. Supp. 2d 1215, 1260-61 (D. Or. 2007). The defense is very narrow. Id. The Defendant must prove the elements of an antitrust violation and cannot merely rely upon restatements of general antitrust principles or conclusory and formulaic statements. adidas Am., Inc., supra; VMG Enterprises, Inc. v. F. Quesada & Franco, Inc., 788 F. Supp. 648, 657 (D.P.R. 1992). The Defendant has not set out a viable antitrust defense, let alone supported such a defense with evidence that the Plaintiff has used its protected mark for improper antitrust purposes. In essence, all the Defendant has asserted is that the Plaintiff has vigorously sought to protect its rights in its protected mark. However, the good faith enforcement by the plaintiff of its trademark rights does not constitute an antitrust violation or a trademark misuse. See Alberto-Culver Co. v. Andrea Dumon, Inc., 466 F.2d 705, 711 (7th Cir. 1972).[7]

---

[7] In his motion for summary judgment, the Defendant refers to an "antitrust affirmative defense" which "also serves as an adequate basis for asserting counter-claims under Section 2 of the Sherman Act." See Docket Entry No. 85, at 1. However, he has not asserted such a counterclaim in this action and the Court declines to create for the Defendant a counterclaim that he has not actually pled.

## B. Unfair Competition under Michigan Common Law

In addition to its Lanham Act Claim for unlawful infringement, the Plaintiff brings a claim for unfair competition under the common law of Michigan. Analysis of this state law claim requires consideration of the same factors required for analysis of a Lanham Act claim of unfair competition brought under 15 U.S.C. § 1125(a). General Motors Corp. v. Keystone Auto. Indus., Inc., 453 F.3d 351, 354 (6th Cir. 2006). The Plaintiff is correct that the same eight factor likelihood of confusion test that is applicable to the Lanham Act trademark infringement claim applies to the Plaintiff's common law claim. Id.; Wynn Oil II, 943 F.2d at 605; Carson v. Here's Johnny Portable Toilets, Inc., 698 F.2d 831, 833 (6th Cir. 1983); Volkswagen AG v. Dorling Kindersley Pub., Inc., 614 F. Supp. 2d 793, 801 (E.D. Mich. 2009). Accordingly, the Court's analysis with respect to the Plaintiff's Lanham Act claim applies equally to the Plaintiff's Michigan common law claim and summary judgment should likewise be granted to the Plaintiff on this claim. See Leelanau Wine Cellars, Ltd., 502 F.3d at 521 (resolution of Lanham Act claim under 15 U.S.C. § 1114 disposes of unfair competition claim brought under Michigan common law).

## C. The Defendant's Counter-claim for Trademark Infringement

The Defendant contends that the Plaintiff's use of its mark has infringed upon the Defendant's own trademark rights to his mark ELITE CRITTER CONTROL in violation of Tennessee common law.[8] This claim has no merit. It is undisputed that the Plaintiff's overall use

---

[8] The Defendant denotes his claim as a Tennessee common law claim and does not assert that his claim is brought under the Tennessee Trademark Act, Tenn.Code.Ann. §§ 47-25-501 et seq. See Docket Entry No. 22, ¶¶ 29-30. However, the ultimate conclusion that he has no basis for an infringement claim against the Plaintiff would not change even if he had raised a claim under the Tennessee statute.

of the CRITTER CONTROL mark preceded the Defendant's use by nearly 30 years, that the Plaintiff's use of the mark was widespread and continuous, that the Plaintiff began using the mark in Tennessee no later than 2001, and that the Plaintiff's Lanham Act registration of the mark likewise preceded both the Defendant's use of his competing mark and his registration of that mark with the State of Tennessee in 2012. The Defendant simply has no factual basis upon which to assert that he has any right to the CRITTER CONTROL mark through prior usage that warrants protection and provides the underpinning for an infringement claim. See Men of Measure Clothing, Inc. v. Men of Measure, Inc., 710 S.W.2d 43, 45 (Tenn. Ct. App. 1985). See also Allard Enterprises, Inc. v. Advanced Programming Res., Inc., 249 F.3d 564, 572 (6th Cir. 2001) ("it is the senior user who has the right to a federal registration, subject only to the prior common law rights of a junior user who has used the mark prior to the senior user's application for federal registration"); Burger King of Fla., Inc. v. Hoots, 403 F.2d 904, 908 (7th Cir. 1968) ("Congress intended the Lanham Act to afford nation-wide protection to federally-registered marks, and that once the certificate has issued, no person can acquire any additional rights superior to those obtained by the federal registrant"); American Auto. Ass'n (Inc.) v. AAA Ins. Agency, Inc., 618 F. Supp. 787, 798 (W.D. Tex. 1985) ("it is settled that state law cannot defeat or limit in any way the protection given to federally registered marks under the Lanham Act. Any state law that would infringe on the registrant's right to the exclusive use of its mark is preempted by federal law.).

D. The Defendant's Motion for Preliminary Injunctive Relief

Preliminary injunctions are considered extraordinary relief, the issuance of which requires great caution, deliberation and sound discretion. Detroit Newspaper Publishers Ass'n v. Detroit

Typographical Union No. 18, Int'l Typographical Union, 471 F.2d 872, 876 (6th Cir. 1972). One factor to be considered in determining a request for preliminary injunctive relief, is whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits of the case. See McNeilly v. Land, 684 F.3d 611, 615 (6th Cir. 2012); Leary v. Daeschner, 228 F.3d. 729, 736 (6th Cir. 2000); Six Clinics Holding Corp., II v. CAFCOMP Systems, 119 F.3d 393, 401 (6th Cir. 1997) Parker v. U.S. Dep't of Agric. 879 F.2d. 1362, 1367 (6th Cir. 1989); Mason Cnty Med. Assocs. v. Knebel, 563 F.2d 256, 261 (6th Cir. 1977). Given the Court's recommendation that summary judgment be granted to the Plaintiff in this action on both the Plaintiff's underlying claims and the Defendant's counter-claims, the Defendant has no likelihood of success in this action and his requested injunctive relief is not warranted.

## R E C O M M E N D A T I O N

Accordingly, the Court respectfully RECOMMENDS that:

1) the Plaintiff's motion to dismiss the Defendant's counter-claims (Docket Entry No. 32) be DENIED as MOOT;

2) the Plaintiff's motion for summary judgment (Docket Entry No. 90) be GRANTED on the issue of the Defendant's liability on the Plaintiff's Lanham Act and Michigan common law claims and GRANTED as to the dismissal of the Defendant's counter-claims in all respects;

3) the Defendant's motion for summary judgment (Docket Entry No. 85) be DENIED in all respects; and

4) the Defendant's motion for a preliminary injunction (Docket Entry No. 46) be DENIED.

If this Report and Recommendation is adopted, further proceedings will be necessary to address the scope of what injunctive relief is warranted and what damages, if any, are warranted in this action.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

JULIET GRIFFIN
United States Magistrate Judge