UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CRITTER CONTROL, INC., ) | |
| ) | |
| Plaintiff/Counter-Defendant, ) | |
| ) | |
| v. ) | Case No. 3:13-cv-00695 |
| ) | Judge Aleta A. Trauger |
| CARY YOUNG, d/b/a ) | Magistrate Juliet E. Griffin |
| ELITE CRITTER CONTROL, ) | |
| ) | |
| Defendant/Counter-Plaintiff. ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR ENTRY OF A PERMANENT INJUNCTION & OTHER RELIEF**

Plaintiff Critter Control, Inc., by and through counsel, respectfully seeks entry of a Permanent Injunction, Cancelation of Defendant's Tennessee Trademark Registration, and an Order of Destruction of Infringing Articles and Websites. Having been granted summary judgment on its Lanham Act claim as to liability, (Doc. 114),[1] Plaintiff is now entitled to pursue injunctive relief and damages. As the Court noted in its Memorandum and Order, further proceedings "are necessary to address what injunctive relief is warranted (including cancellation of the defendant's Tennessee trademark registration under Tenn. Code 47-25-509(3)(F) and a permanent injunction under 15 U.S.C. § 1116) . . . ." (Doc. 114 at p. 7). At the status conference held on October 23, 2014, the parties and the Magistrate Judge all agreed that Plaintiff could seek permanent injunction by filing a written motion, which Defendant could oppose in writing, given that no live testimony would be necessary.

---

[1] The Court denied without prejudice Plaintiff's request for summary judgment on its Michigan unfair competition claim, giving Plaintiff the opportunity to seek to renew its motion on that claim, (Doc. 114), which Plaintiff ultimately chose not to pursue. The Court also denied Defendant's motion for summary judgment and Defendant's motion for preliminary injunction. Id.

**I.     Relevant Procedural History**

In its Complaint, Plaintiff asserted violations of the Lanham Act, codified at 15 U.S.C. § 1114.[2] Plaintiff asserted that Defendant's use of "Elite Critter Control" in connection with animal removal and relocating services is confusingly similar to Plaintiff's federally registered mark CRITTER CONTROL and constitutes trademark infringement under the Lanham Act. 15 U.S.C. § 1114(1). (Doc. 1 at ¶ 36). Plaintiff also asserted that Defendant's use of "Elite Critter Control" amounts to use of a counterfeit mark. Id. at ¶¶ 29, 33–35, 38.

Plaintiff asserted, and the Court accepted, the following undisputed material facts: First, Plaintiff has continuously used the mark CRITTER CONTROL in connection with animal removal services since 1983 (Docs. 1-1, 90 & 109). Second, nearly 30 years later, Defendant began using the mark ELITE CRITTER CONTROL in 2012, registering his business name with the Tennessee Department of State as a trademark on May 4, 2012. (Docs. 1-4, 90 & 109).

Among other relief sought, Plaintiff sought permanent injunctive relief pursuant to 15 U.S.C. § 1116. Plaintiff also alleged that this is an exceptional case, entitling Plaintiff to an award of attorneys' fees under 15 U.S.C. § 1117. Id. at ¶ 39. Further, Plaintiff sought the cancellation of Defendant's Tennessee registered trademark for ELITE CRITTER CONTROL. Id. at ¶ 40.

After engaging in discovery, Plaintiff moved for summary judgment. The Magistrate Judge issued a Report & Recommendation ("R&R") (Doc. 109), recommending, among other things, that Plaintiff's motion for summary judgment (Doc. 90) be granted in connection with Plaintiff's Lanham Act claim. In both the R&R and the District Court's Memorandum Opinion,

---

[2] As explained in note 1 herein, Plaintiff has chosen not to pursue its separate claim of Unfair Competition under Michigan Common law. As the Court noted in its Memorandum and Order (Doc. 114 at n.5), the Michigan unfair competition claim "seems to be peripheral to the Lanham Act claim, which already carries with it statutory grounds for making the plaintiff whole, including . . . attorney's fees, and costs, as well as injunctive relief."

the Court provided its written analysis of the facts and the law. (Docs. 109 & 114). The District Court adopted the R&R in connection with Plaintiff's Lanham Act claim, concluding that "the balance of factors weighs strongly in favor of the plaintiff and supports a finding that there is a likelihood of confusion here." (Doc. 114 at p. 6).

**II.     Legal Standard**

Federal Rule of Civil Procedure 65 sets forth the contents and scope that must be included in every injunction. It requires every such order to state the reasons why injunctive relief was ordered, state its terms specifically and describe in reasonable detail the acts to be restrained or required. Fed. R. Civ. P. 65(d). An injunction binds the parties, their agents and employees and other persons who are in active concert with the parties or their agents/employees. Id.

> The Lanham Act provides, in pertinent part:
>
> The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title.

15 U.S.C.A. § 1116.

> In any action arising under this chapter, in which a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) of this title, or a willful violation under section 1125(c) of this title, shall have been established, the court may order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the defendant, bearing the registered mark or, in the case of a violation of section 1125(a) of this title or a willful violation under section 1125(c) of this title, the word, term, name, symbol, device, combination thereof, designation, description, or representation that is the subject of the violation, or any reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, matrices, and other means of making the same, shall be delivered up and destroyed.

15 U.S.C.A. § 1118.

"A plaintiff seeking a permanent injunction must demonstrate that it has suffered irreparable injury, there is no adequate remedy at law, 'that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted,' and that it is in the public's interest to issue the injunction." Audi AG v. D'Amato, 469 F.3d 534, 550 (6th Cir. 2006). "The law of this Circuit holds that no particular finding of . . . irreparable harm is necessary for injunctive relief in trademark infringement or unfair competition cases . . . . [I]rreparable injury 'ordinarily follows when a likelihood of confusion or possible risk to reputation appears' from infringement or unfair competition . . . . Thus, a court need only find that a defendant is liable for infringement or unfair competition for it to award injunctive relief." Circuit City Stores, Inc. v. CarMax, Inc., 165 F.3d 1047, 1056 (6th Cir. 1999) (quoting Wynn Oil Co. v. Am. Way Serv. Corp., 943 F.2d 595, 608 (6th Cir. 1991)).

In Wynn, the Sixth Circuit affirmed the permanent injunctive relief awarded by the lower court. Id. at 609. There the lower court had issued a permanent injunction barring the defendant from using "the word or term X-TEND or any other designation confusingly similar to X-TEND." Id. at 598. Rejecting the defendants' argument that the injunction was too broad and prevented them from using a common English word, the Sixth Circuit agreed with the plaintiffs that it is common for courts to enjoin use not only of the trademark but also of confusingly similar words. Id. at 608. "In fact," the Sixth Circuit explained, "against the party bold enough to engage in willful infringement, such a command is necessary to prevent the infringer from making an insignificant change in the mark to avoid the injunction and then using the altered mark in a confusingly similar manner." Id.

## III. Despite the Summary Judgment Order, Defendant Continues to Infringe & Use a Counterfeit Mark

Despite receiving notice of the R&R and Memorandum and Opinion granting summary judgment to Plaintiff on its Lanham Act claim, Defendant continues to infringe on Plaintiff's federally registered mark.[3] The R&R was issued on September 8, 2014, and the Memorandum and Opinion was issued on September 30, 2014. Despite the grant of summary judgment to Plaintiff, Defendant has continued to use ELITE CRITTER CONTROL in connection with animal removal and relocating services. On at least two occasions in October 2014, Defendant performed services under the name ELITE CRITTER CONTROL, as evidenced by receipts he provided customers. See **Exhibit A** to the Notice of Filing (copies of two receipts Defendant produced pursuant to the Order granting Plaintiff's Motion to Compel (Doc. 129)). Defendant's webpage continues to reference ELITE CRITTER CONTROL throughout the page. See **Exhibit B** to the Notice of Filing (screen print of Defendant's website http://ycary1.wix.com/elite-critter-control). Defendant continues to post tweets on Twitter under the handle @EliteCritter, where he describes himself as "owner @ Elite Critter Control™ A Wildlife and Nuisance Animal Removal and Relocating Service," and where he has posted new tweets as recently as November 12, 2014. See **Exhibit C** to the Notice of Filing (copy of printout from Defendant's Twitter page). As of the filing of this Motion, Defendant's YouTube page still has 11 videos accessible for viewing, which Defendant posted to the site under the name "Elite Critter Control™." See **Exhibit D** to the Notice of Filing (copy of screen print from Defendant's YouTube account). Defendant still hosts a blog on WordPress.com called "Elite Critter Control™," which

---

[3] Defendant has been on notice of Plaintiff's rights since at least August 21, 2012, when Plaintiff sent multiple letters to Defendant asking him to cease and desist use of ELITE CRITTER CONTROL. See Doc. 1-2 & Doc. 1-3. Further, Defendant has had constructive notice of Plaintiff's rights in the mark CRITTER CONTROL since before Defendant selected to use ELITE CRITTER CONTROL, as the Lanham Act explains that federal registration of a mark places the defendant on constructive notice. 15 U.S.C. § 1072.

disparages Plaintiff. See http://elitecrittercontrol.wordpress.com/2013/10/31/another-bad-seed-in-our-industry/. Through CafePress.com, Defendant continues to offer apparel featuring his logo, and bearing the mark ELITE CRITTER CONTROL and Defendant's email address. See **Exhibit E** to the Notice of Filing (copy of screen print from Defendant's CafePress.com account). When searching for "Elite Critter Control" on Google, websites associated with and maintained by Defendant occupy the first three pages of search results.[4] See **Exhibit F** to the Notice of Filing (copy of screen print from Google search for "Elite Critter Control").

Defendant has taken zero remedial steps in light of the summary judgment order. Instead, Defendant continues to infringe on Plaintiff's federally registered mark.

In light of the summary judgment order, Defendant's continued use of ELITE CRITTER CONTROL or any mark that is confusingly similar to CRITTER CONTROL in connection with animal removal/relocation services, whether in marketing or delivering Defendant's services and regardless of medium (including but not limited to social media, internet, merchandise, flyers, paper, telephone, receipts and so forth) constitutes continued and additional infringement. Such continued infringement irreparably harms Plaintiff. As long as Defendant continues to use Plaintiff's trademark, whether in marketing or providing services, Plaintiff is and will be harmed; thus, Defendant's willful and continued use of Plaintiff's trademark has no adequate remedy at law. Furthermore, it is in the public's interest to issue the injunction in order to prevent consumers from being misled. Finally, in balancing the hardships between each party, Defendant faces no hardship in refraining from willful trademark infringement, whereas Plaintiff faces hardship from loss of sales and the loss of its ability to control its branding and public

---

[4] In addition to the Twitter, YouTube, and CaféPress pages, Defendant continues to maintain multiple other social media accounts under the name "Elite Critter Control™," including Pinterest, Tumblr, and Google+ accounts. Defendant also continues to list himself as the owner of Elite Critter Control on LinkedIn.

image. Having demonstrated that each of the four factors weighs in its favor, Plaintiff requests relief in the form of a permanent injunction.

In addition to the restrictions from use of the trademark as detailed above, Plaintiff specifically requests that Defendant be required to delete all postings, blogs, internet pages, and social media accounts in the name of ELITE CRITTER CONTROL or any name which is confusingly similar to Plaintiff's trademark. Defendant has established a widespread internet presence in the name of ELITE CRITTER CONTROL and/or ELITE CRITTER CNTRL, as described above. In addition to exploiting these handles, accounts and sites to market his animal removal/relocation business, Defendant displays images and content on the site which are disturbing and contrary to Plaintiff's company culture and values. As case in point, Defendant maintains a Pinterest account in the name of Elite Critter Control™ where he describes himself as "Owner @ Elite Critter Control™ A Wildlife Nuisance Animal Control Co." Defendant's Pinterest account includes "Pinboards" with the following titles: "Serial Killers, Killers, And Pure Evil," containing graphic images of murder scenes, including the victims of violent crime; "☠Death☠," containing graphic images of violent death and accidents; and "The Death Pangs of a Chaos God," containing disturbing images of "macabre art." See **Exhibit G** to the Notice of Filing (copy of screen prints from Defendant's Pinterest account).

Defendant's association of these violent and disturbing images with Plaintiff's trademark further defines the irreparable harm that Defendant's willful infringement continues to inflict upon Plaintiff. Defendant's conduct threatens the very protections afforded by trademark law. Consumers who come across Defendant's websites and social media accounts, which have been established under Plaintiff's familiar trademark, are likely to believe that those sites and accounts are related to and created by Plaintiff. This confusion constitutes a loss of control by Plaintiff

{01156116.6 }                                7
Case 3:13-cv-00695   Document 137   Filed 11/19/14   Page 7 of 11 PageID #: 1134

over its trademark. Not only can Plaintiff not control the quality of services provided by Defendant, but Defendant has associated and continues to associate Plaintiff's trademark with grossly disturbing images, undermining consumer confidence in Plaintiff's brand and devaluing Plaintiff's investment in its trademark. Once lost, no amount of money can restore consumer confidence. The continuing damage to Plaintiff's reputation, goodwill and consumer base is impossible to remedy without injunctive relief.

### IV. Cancellation of Defendant's Tennessee Trademark Registration

Plaintiff also seeks an order which cancels Defendant's Tennessee trademark registration. Tenn. Code 47-25-509, provides in pertinent part:

> The secretary shall cancel from the register, in whole or in part:
> (3) Any registration concerning which a court of competent jurisdiction finds that:
> (F) The registered mark is so similar to a mark registered by another person in the United States patent and trademark office prior to the date of the filing of the application for registration by the registrant hereunder, and which has not been abandoned, as to be likely to cause confusion, mistake or deception; provided, that should the registrant prove that the registrant is the owner of a concurrent registration of a mark in the United States patent and trademark office covering an area including this state, the registration hereunder shall not be cancelled for such area of the state; or
>
> (4) When a court of competent jurisdiction shall order cancellation of a registration on any ground

In both the R&R and the Memorandum and Order granting summary judgment to Plaintiff, this Court previously rejected Defendant's argument that he was entitled to any rights that might typically stem from the state registration of ELITE CRITTER CONTROL with the Tennessee Secretary of State. In the R&R, the Magistrate stated:

> The Defendant simply has no factual basis upon which to assert that he has any right to the CRITTER CONTROL mark through prior usage that warrants protection and provides the underpinning for an infringement claim. See Men of

> Measure Clothing, Inc. v. Men of Measure, Inc., 710 S.W.2d 43, 45 (Tenn. Ct. App. 1985). See also Allard Enterprises, Inc. v. Advanced Programming Res., Inc., 249 F.3d 564, 572 (6th Cir. 2001) ("it is the senior user who has the right to a federal registration, subject only to the prior common law rights of a junior user who has used the mark prior to the senior user's application for federal registration"); Burger King of Fla., Inc. v. Hoots, 403 F.2d 904, 908 (7th Cir. 1968) ("Congress intended the Lanham Act to afford nation-wide protection to federally-registered marks, and that once the certificate has issued, no person can acquire any additional rights superior to those obtained by the federal registrant"); American Auto. Ass'n (Inc.) v. AAA Ins. Agency, Inc., 618 F. Supp. 787, 798 (W.D. Tex. 1985) ("it is settled that state law cannot defeat or limit in any way the protection given to federally registered marks under the Lanham Act. Any state law that would infringe on the registrant's right to the exclusive use of its mark is preempted by federal law.).

(Doc. 109 at p. 23). This Court, in adopting the R&R in connection with Plaintiff's Lanham Act claim, has already concluded that "the balance of factors weighs strongly in favor of the plaintiff and supports a finding that there is a likelihood of confusion here." (Doc. 114 at p. 6). Given the finding that there is a likelihood of confusion in this case and given Plaintiff's prior use and registration of the trademark, Tenn. Code Ann. § 47-25-509 mandates that Defendant's State registration be cancelled in whole.

V. **Conclusion**

As set forth in the Proposed Order, Plaintiff requests that the Court issue permanent injunctive relief against Defendant, and that Defendant, its officers, agents, representatives, servants, employees, attorneys, successors and assignees, and all others in active concert or participation with Defendant, be enjoined and restrained from infringing Plaintiff's trademarks and service marks, including the CRITTER CONTROL mark or assisting, aiding, or abetting any other person or business entity from infringing Plaintiff's trademarks or service marks, including the CRITTER CONTROL mark.

Respectfully submitted,

/s/ Stephen J. Zralek
Stephen J. Zralek, BPR No. 18971
BONE MCALLESTER NORTON, PLLC
511 Union Street, Suite 1600
Nashville, TN 37219
(615) 238-6305 -- telephone
szralek@bonelaw.com
*Counsel for Plaintiff Critter Control, Inc.*

**CERTIFICATE OF SERVICE**

I certify that I served a copy of the foregoing document via email and U.S. Mail on this 19th day of November, 2014 on:

Cary Young, d/b/a Elite Critter Control
2122 Neelys Bend Road
Madison, TN 37115
elitecrittercontrol@rocketmail.com
*Defendant, pro se*

/s/ Stephen J. Zralek